UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:17-cr-525-T-17CPT

THOMAS R. CASTILLO
a/k/a Thomas Castillo El Bey
a/k/a Tutankhamun Castillo El Bey

_____/

## REPORT AND RECOMMENDATION

Before me on referral for a Report and Recommendation are *pro se* Defendant Thomas R. Castillo's (1) *Demand for Dismissal & Summary Judgment Due to Acquiescence, Negligence* (Motion for Dismissal & Summary Judgment); (2) *Request for Entry of Default Judgment* (Request for Default); (3) *Notice of Motion and Motion to Dismiss* (Motion to Dismiss); and (4) *Response to United States Government [sic] Opposition of Demand to Dismiss the Indictment and Motion to Compel* (Motion to Compel). *See* (Docs. 54, 63, 65, 68, 73). The government has responded to each of these motions, *see* (Docs. 66, 71, 72, 79), and the matters are now ripe for my review. For the reasons discussed below, I recommend that the Court deny the Defendant's motions as both procedurally infirm and substantively without merit.

## BACKGROUND

On November 2, 2017, the Defendant was indicted on two counts of making and presenting, and causing to be made and presented, false claims to a department and agency

of the United States, in violation 18 U.S.C. §§ 287, 2. (Doc. 1). In both counts, the Defendant is alleged to have claimed tax refunds exceeding $230,000 despite knowing that such claims were false, fictitious, and fraudulent.[1] *Id.*

The Defendant was arraigned on these charges on November 17, 2017, and pleaded not guilty to both counts. (Doc. 7). Because the Defendant was indigent, the Federal Public Defender's Office was appointed to represent him. (Doc. 6).

On November 20, 2017, the Court entered a Pretrial Discovery Order establishing a number of deadlines governing the disposition of this case. (Doc. 8). Of relevance here, that Order directed the Defendant to file any motions challenging the sufficiency of the Indictment within fifteen days of his arraignment (*i.e.,* by on or about December 4, 2017), unless otherwise ordered or permitted by the trial judge. *Id.* at 4.

On January 8, 2018, the Defendant appeared before the Court for a bond revocation hearing and made an *ore tenus* motion to represent himself. (Docs. 21, 23). After conducting the appropriate inquiry pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975), the Court granted the Defendant's request and directed that the Federal Public Defender's Office remain in the case as stand-by counsel. (Docs. 22, 23, 25). During the course of the hearing, the Defendant made an *ore tenus* motion to dismiss the Indictment, which the Court denied. (Doc. 23).

On February 23, 2018, the Defendant and government counsel appeared for a status conference before the Honorable Elizabeth A. Kovachevich. (Doc. 28). Because an issue

---

[1] According to the government, at least one of these refunds was actually paid to the Defendant. *See* (Doc. 42 at 6).

2

arose at that hearing regarding the Court's filing requirements, the Defendant was instructed to appear before me to discuss the matter. *Id.*

At a subsequent hearing conducted on March 3, 2018, the Defendant was reminded of the importance of adhering to the Court's deadlines and the consequences of his failure to do so. (Doc. 34)) (court "discusses with *pro se* defendant . . . the importance, need and consequences of not meeting the deadlines"). The Court thereafter issued an Order extending the Defendant's discovery and motions deadlines to April 15, 2018. (Doc. 33).

On April 2, 2018, the Court received a document from the Defendant in which he stated, *inter alia,* that the Indictment and the judicial officers involved in this matter had "fraudulently claim[ed] authority from this Executor Office to administrate for" the Defendant. (Docs. 38-1, 39 at 1)). The Court liberally construed this document, in part, to challenge the sufficiency of the Indictment, directed the government to respond to that challenge, and, of relevance here, noted in the interim that "[a] district court has personal jurisdiction over any defendant brought before it on a federal indictment charging a violation of federal law." (Doc. 38 at 1-2) (citing *United States v. Rendon,* 354 F.3d 1320, 1326 (11th Cir. 2003)).

On April 13, 2018, the Defendant filed a *Notice of Special Appearance—Mandatory Judicial Notice—Motion to Dismiss—Notice of Subrogation,* in which he sought, among other relief, dismissal of the Indictment and a certification of his right of "subrogation." (Doc. 40 at 1-2, 41). In support of these requests for relief, the Defendant included with his filing, among other items, a "Letter Rogatory for Relief," a "Notice of Fee Schedule and Remedy," and the "United Nations Declaration of the Rights of Indigenous Peoples." *Id.* at

3-39. The Defendant also included a motion for an extension of time to "fil[e] documents to aid his defense properly." *Id.* at 40.

On April 19, 2018, the Court entered an Order denying both of the Defendant's construed motions to dismiss. (Doc. 43). In doing so, the Court noted that the Indictment properly tracked the language of the charging statute, alleged each of the essential elements of the charged offense, and provided the Defendant with sufficient notice for him to prepare his defense and invoke double jeopardy if necessary. *Id.* at 2. The Court also denied the Defendant's request for an extension of time, observing that the Defendant had already been warned regarding the significance of the Court's pretrial motions deadline and "the consequences for noncompliance." *Id.*

On April 25, 2018, the Defendant filed a *Constructive Notice of Conditional Acceptance* (Notice of Conditional Acceptance), stating, *inter alia*, that he sought an "abatement of . . . [the] public proceedings processes [sic] . . . pending the outcome of the Counterclaim that is attached hereto." (Doc. 50 at 2). The Defendant included with his Notice of Conditional Acceptance an "Affidavit of Specific Negative Averment," in which he alleged, *inter alia*, that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and tender is refused, there is a discharge, to the extent of the amount of the tender, . . . making further prosecution moot." *Id.* at 3.

On the same date, the Defendant filed a *Notice of Tender for Setoff and Notice of Fiduciary Appointment and Notice of Settlement Offer*. (Doc. 51). In that Notice, the Defendant identified himself as the "Holder" of a particular "Account" and "appointed" Assistant U.S. Attorney (AUSA) Megan Kistler and the judicial officers who have been involved in this matter as fiduciaries charged with, among other duties, "execut[ing] the

setoff, settlement, and closing of ACCOUNT [sic]." *Id.* at 2. The Defendant also referenced "three private tender instruments" and requested that the "balance of the ACCOUNT be adjusted to Zero dollars ($0.00) to reflect the ledgering of said TENDERS." *Id.* at 4. The Defendant additionally referenced a "Statement of Account" and asserted that, "[u]pon the Respondent's acceptance of the Request Regarding a Statement of Account, the Respondent shall," among other things, "credit the remaining balance for the ACCOUNT with the TENDER;" "give proper public notice of the satisfaction of all obligations on the ACOUNT . . . by executing or causing to be executed a Discharge for charges Title 18 U.S.C. § 287;" and "give notice to the CLAIMANT of the filing of the Discharge for charges Title 18 U.S.C. § 287." *Id.* at 5. Interspersed throughout the Defendant's Notice were references to, among other citations, various provisions of the Uniform Commercial Code, Rule E of the Supplemental Admiralty Rules, and "Private International Law." *See, e.g., id.* at 2, 4-6.

On May 2, 2018, the Defendant filed his Motion for Dismissal & Summary Judgment, in which he referenced the above Notices and complained that AUSA Kistler (whom the Defendant denominated as the "Representative") had not yet "compl[ied] with the demand of fulfilling her fiduciary responsibility via Subrogation." (Doc. 54 at 1-2). The Defendant similarly alleged that "[a]ll judges have yet to comply with the[ir] appointed responsibility," that "[a]ll fiduciaries have neglected to give a Statement of Account as requested" by the Defendant, and that "[r]ejection of payment is called for [sic] discharge of charges [sic] via Uniform Commercial Code." *Id.* at 2. The Defendant requested the Court "issue a Bill of Quia Timet for an injunction to move the [C]ourt for dismissal via Fraud Upon the Court with prejudice if the Representative failed to comply with the demand." *Id.*

5

at 1. In support of these claims, the Defendant again cited the Uniform Commercial Code and Private International Law, as well as "Ecclesiastical Law." *Id.* at 1-2.

Ten days later, on May 10, 2018, the Defendant filed his Request for Default, stating that he was entitled to such relief because, *inter alia*, "there ha[d] been a failure to respond or otherwise defend to [sic] the Undersigned's previous Notices." (Doc. 63 at 1). The Defendant additionally argued "that no Corpus Delecti ha[d] been proven for this court case," apparently on the grounds that "there [wa]s no constitutional lawful money in exchange and the common tender people use on a daily basis [wa]s a debt via promissory note . . ." *Id.* at 2.

On May 11, 2018, the Defendant filed his Motion to Dismiss, arguing that the Indictment was "void on its face[,] . . . the institution of the prosecution is invalid[, and] . . . thus, the case must be dismissed for want of jurisdiction." (Doc. 65 at 2). In support of these claims, the Defendant asserted, *inter alia*, that the "Plaintiff" lacked "standing" to bring the action and that the Court did not have personal jurisdiction over him. *Id.* at 2-5.

On May 18, 2018, the Defendant filed his Motion to Compel, arguing, *inter alia*, that "dismissal [wa]s appropriate" under the circumstances in this case, including the government's "selective and/or vindictive . . . prosecution," as evidenced by the Representative's failure to respond to the Defendant's "documents," as well as the "improper joinder" that occurred after the Representative withdrew. (Doc. 68 at 1-2). In support of these claims, the Defendant cited, among other authority, "Ecclesiastical Law" and "Indigenous Rights." *Id.* at 3. The Defendant concluded his motion by asserting that "the courthouse & [sic] government would rather leave . . . [him] in dishonor and use his

body as collateral for a fine to be imprisoned through human trafficking of private prison institution contracts instead of exhausting all remedies." *Id.* at 3-4.

## DISCUSSION

### I. Defendant's Requests for Relief Are Procedurally Infirm

The Defendant's motions seek a number of forms of relief under the Federal Rules of Civil Procedure that have no application in a criminal case. By way of example, contrary to the Defendant's assertion, "'[t]here is no summary judgment procedure in criminal cases.'" *United States v. Wilkerson*, 702 F. App'x 843, 849-850 n.2 (11th Cir. 2017) (quoting *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)).[2] Indeed, by definition, the Federal Rules of Civil Procedure govern the procedure only in civil, not criminal, actions brought in federal courts. *See* Fed. R. Civ. P. 1 ("[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts . . ."). The Defendant has not cited any cognizable authority that would allow for the civil remedies he requests, and his motions seeking such relief should be denied on that basis alone.

To the extent the Defendant's motions can be liberally construed as challenges to the sufficiency of the Indictment, they are procedurally infirm for additional reasons as well. A number of these challenges have already been rejected by the Court, and the Defendant should not be allowed to re-litigate them at this juncture. Furthermore, the deadline for making such challenges was April 15, 2018, and the instant motions were filed weeks after that deadline. As a result, any construed challenges to the sufficiency of the Indictment are untimely and are subject to denial on that basis as well.

---

[2] "Unpublished opinions [by the Eleventh Circuit] are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

7

The Defendant's Motion to Compel is likewise procedurally infirm. As the government points out, that submission is styled, at least in part, as a response to the government's opposition to the Defendant's motion to dismiss. Local Rule 3.01(c), however, prohibits the filing of such replies or further memoranda without leave of the Court and none was obtained here. *See* M.D. Fla. Rule 3.01(c).

## II.     Defendant's Requests for Relief Are Also Substantively Without Merit

In addition to these procedural infirmities, the Defendant's motions are substantively without merit. I note as an initial matter that, as with several of the Defendant's prior filings, "the meaning and intention" of the motions before me are challenging to decipher and often unclear. *See* (Doc. 43 at 1) (noting that "meaning and intention" of Defendant's motions are "not completely clear"). Because the Defendant is proceeding *pro se*, however, I have endeavored to construe these motions liberally. Also, because the Defendant's motions make a number of the same arguments and seek overlapping forms of relief, I have elected to address the motions by focusing on the arguments the Defendant has asserted and the relief he has requested. With these prefatory comments, I turn to the Defendant's motions and attendant arguments, beginning with his request for summary judgment.

To the extent the Defendant's summary judgment request seeks to challenge the sufficiency of the Indictment, it fails on the merits. It is "well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'" *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Salmon*, 378 F.3d 1266, 1268 (11th Cir. 2004)). For an indictment to be facially valid, it need only "contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *Id.* (internal quotations and citation omitted).

In this case, as the Court previously noted in rejecting a similar challenge, the Indictment contains the language used in the statute, provides notice as to what specific conduct is charged, and sufficiently apprises the Defendant of the charges he must be prepared to meet at trial and to plead double jeopardy. The rules require nothing more.

The Defendant's motion to dismiss the Indictment for "want of jurisdiction" is similarly meritless. *See* (Doc. 65 at 2). "Subject-matter jurisdiction defines the court's authority to hear a given type of case," and "Congress bestows that authority on lower courts by statute." *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (internal quotations and citations omitted). The operative statute here is 18 U.S.C. § 3231, which provides district courts with "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. "As such, all that matter[s] for purposes of the district court's subject-matter jurisdiction [i]s that [t]he United States filed an indictment charging . . . [the Defendant] with violating 'laws of the United States.'" *United States v. Brown*, 752 F.3d 1344, 1348 (11th Cir. 2014) (internal quotations and citations omitted); *see also United States v. Bjorkman*, 270 F.3d 482, 490 (7th Cir. 2001) ("[D]istrict judges *always* have subject-matter jurisdiction based on *any* indictment purporting to charge a violation of federal criminal law.") (emphasis in original).

In this case, the Indictment charges the Defendant with, *inter alia*, making and presenting false claims to a department and agency of the United States (Doc. 1), an offense that is a violation of 18 U.S.C. § 287. As the Indictment charges the Defendant with a violation of federal criminal law, the Court has subject-matter jurisdiction.

The Defendant's reliance on the standing doctrine is misplaced. It is well established that the government suffers an "injury in fact" and thus has standing when a defendant

violates its criminal laws. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (an "injury to the United States—[including] the injury to its sovereign arising from violation of its laws" suffices to support government pursuing a criminal action); *United States v. Yarbrough*, 452 F. App'x 186, 189 (3rd Cir. 2011); *see also United States v. Daniels*, 48 F. App'x 409, 418 (3rd Cir. 2002) ("As sovereign, the United States has standing to prosecute violations of valid criminal statutes."). As the Supreme Court explained over a century ago:

> Every government, [e]ntrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.

*In re Debs*, 158 U.S. 564, 584 (1895), *disapproved of on other grounds by Bloom v. State of Ill.*, 391 U.S. 194, 208 (1968); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (recognizing the sovereign's interest in "creat[ing] and enforc[ing] a legal code, both civil and criminal"); *Rice v. Farley*, 2014 WL 2441260, at *2 (E.D. Ky. May 30, 2014) ("While individualized injury is necessary for private plaintiffs to have standing in private litigation, diffuse injuries to the general public are enough to create standing between the public (the government) and criminal defendants.") (internal quotation and citation omitted).

The Defendant's claim that the Court is without personal jurisdiction over him is likewise without merit. As the Court noted in previously rejecting this claim, federal courts have personal jurisdiction over criminal defendants before them, whether or not they are

forcibly brought into court. *United States v. Alvarez–Machain*, 504 U.S. 655, 660–62 (1992); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States v. Szilagyi*, 1989 WL 68592, at 3 (6th Cir. June 26, 1989) ("[T]here is no question that every person present in the United States is generally subject to the laws of the United States."). As such, the Court has personal jurisdiction over the Defendant. *United States v. Hands*, 2005 WL 1183213, at *1 (S.D. Ala. May 18, 2005) ("A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law.") (internal quotation marks and citation omitted).

The Defendant's request for a Default because "no Corpus Delecti has been proven for this court case" is unavailing. The doctrine of "corpus delicti," which "means, literally, the body of a crime,"[3] was addressed by the Supreme Court in *Opper v. United States*, 348 U.S. 84 (1954). In that case, the petitioner contended, and the Court agreed, that "where extrajudicial admissions that point to guilt are made by the accused, after the date of the acts charged as crime, testimony by witnesses other than the accused as to such oral or written admissions cannot be accepted as evidence without corroboration of the facts stated." *Id.* at 162.

The Tenth Circuit has more recently discussed the corpus delicti doctrine, explaining that necessary to a defendant's conviction for a particular crime is extrinsic evidence supporting a conclusion that the crime occurred beyond a defendant's confession:

> An analysis of every crime reveals three component parts—(1) the occurrence of the specific kind of injury or loss (as in homicide, a dead person; in arson, a burnt house; in larceny, property missing), (2) somebody's criminality as the source of the loss (in contrast, *e.g.*, to an accident), and (3) the accused's identity

---

[3] *Housley v. Tennis*, 2004 WL 759649, at *3 (E.D. Pa. Apr. 5, 2004) (internal quotations and citation omitted).

11

> as the doer of the crime. *Wigmore on Evidence* § 2072 (Chadbourn rev. 1978); *accord*, *McCormick on Evidence* § 145 (3d Ed.1984). The first two of these elements are what constitutes the concept of corpus delicti. *Id.*; *accord*, C. Torcia, 4 *Wharton's Criminal Evidence* § 648 (14th Ed.1987).

*United States v. Shunk*, 881 F.2d 917, 918-19 (10th Cir. 1989).

A survey of the case law reveals that the corpus delicti doctrine most commonly arises in the context of uncorroborated extrajudicial confessions. *See, e.g., Opper, supra*; *Shunk*, 881 F.2d at 919 ("As it presently exists, the corpus delicti concept has been properly characterized as a 'version' of the corroboration requirement for the introduction of extrajudicial statements"); *Harris v. Jones*, 2017 WL 1017644, at *7 (N.D. Fla. Jan. 31, 2017) ("Traditional application of the corpus delicti rule requires the State to at least show the existence of each element of the crime to authorize the introduction of a defendant's admission or confession.") (internal quotations and citations omitted). The Defendant has not offered a cognizable theory as to how the corpus delecti rule applies to this federal tax case, nor has he cited any legal authority in support of his contention.

Moreover, the proper vehicle for raising such a challenge is through a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure at the close of the government's case. At that point, with the benefit of the complete record before it, the Court is in a position to determine whether the government's evidence was sufficient to satisfy all of the elements of the charged crimes. Because the Defendant's corpus delicti argument is both unsupportable and premature, it provides no basis for relief here.

To the extent that the Defendant's motions, construed liberally, can be read to allege violations of *Brady v. Maryland*, 373 U.S. 83 (1963), or prosecutorial misconduct, such contentions are without merit. *See, e.g.*, (Doc. 54 at 2-4; Doc. 68 at 1-2). "To establish a

*Brady* violation, the defendant must show that (1) the government possessed evidence favorable to [the defendant]; (2) [the defendant] did not possess the evidence and could not obtain it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *United States v. Rigal*, ___ F. App'x ___, 2018 WL 3115779, at *3 (11th Cir. June 25, 2018) (citing *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (per curiam)). "[T]o establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Cavallo*, 790 F.3d 1202, 1219 (11th Cir. 2015).

In this case, the Defendant has not demonstrated that the government has committed a *Brady* violation or engaged in prosecutorial misconduct. His references to such matters consist mostly, if not entirely, of a series of declaratory statements with little or no meaningful context, do not identify the evidence the government is allegedly withholding that is both favorable to him and material to his case, and are otherwise speculative. *See, e.g.*, (Doc. 54 at 2) ("The Representative's silence may be due to suppression of Exculpatory Evidence favorable to the Undersigned, proving the case has been settled as far back as to [sic] January 8th, 2018.").

The Defendant's related assertion that the government has engaged in selective and/or vindictive prosecution against him is also lacking. To establish a selective prosecution claim, the defendant must present "*clear* evidence" showing that: "(1) the prosecution had a discriminatory effect, *i.e.*, that similarly situated individuals were not prosecuted; and (2) that the difference in treatment, or selectivity of the prosecution, was motivated by a discriminatory purpose." *United States v. Williams*, 684 F. App'x 767, 777

13

(11th Cir. 2017) (internal quotations and citations omitted) (emphasis in original). A criminal defendant seeking to pursue a vindictive prosecution claim, on the other hand, must show some "objective evidence of actual vindictiveness on the part of the government" or "raise circumstances meriting a rebuttable presumption of vindictiveness." *United States v. Rafferty*, 296 F. App'x 788, 796 (11th Cir. 2008).

In this case, the sole basis for the Defendant's claim of selective and/or vindictive prosecution appears to be his allegation that "the Representative's fail[ed] to respond []or comply to [sic] the [Defendant's] documents." (Doc. 68 at 2). This assertion falls woefully short of establishing a claim of selective and/or vindictive prosecution and should be rejected.

The Defendant's claim of "improper joinder" fares no better. Such claims are governed by Rule 8 of the Federal Rules of Criminal Procedure, which provides, in pertinent part:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).

Although difficult to discern, it appears that the basis of the Defendant's argument here is that, once the Representative (*i.e.,* AUSA Kistler) withdrew from the case, "any party entering after is merely asserting improper joinder." (Doc. 68 at 2). This contention is frivolous and does not state a claim under Rule 8(a). As a result, it should be rejected.

The Defendant's remaining arguments need not detain the Court long. Suffice it to say that these arguments improperly conflate rules, theories, and remedies applicable to civil

actions with those available in criminal cases and rely on authority that is either legally irrelevant or non-cognizable altogether. By way of example, in his Motion for Dismissal & Summary Judgment, the Defendant references such terms as "[s]ubrogation," a "Bill of Quia Timet,"[4] "negligence," and "commercial liability." (Doc. 54 at 1-4). All of these terms pertain to civil, not criminal, matters, and the Defendant has not cited any legal authority demonstrating that they have any relevance to the instant criminal charges, much less warrant the type of relief requested. The same can be said with respect to the Defendant's citations in the same filing to "Ecclesiastical Law," "Private International Law," and the "Uniform Commercial Code."

## CONCLUSION

For the reasons discussed above, I recommend that the Court DENY the Defendant's motions (Docs. 54, 63, 65, 68) in their entirety.

Respectfully submitted this 9th day of July 2018.

*[signature]*

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual

---

[4] A bill of quia timet is "the forerunner of an action to quiet title," *Chan v. Schatz*, 280 F.Supp.3d 546, 548 (S.D.N.Y. 2017).

finding(s) or legal conclusion(s) the District Judge adopts from the Report and

Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Elizabeth A. Kovachevich, United States District Judge
Pro Se Defendant
Counsel of record